1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                        SOUTHERN DISTRICT OF CALIFORNIA

10   CAROL A. COOPER,                          Civil No.    12-cv-2673-AJB (DHB)

11                             Plaintiff,
                                              **REPORT AND**
12            v.                              **RECOMMENDATION**
                                              **REGARDING CROSS-MOTIONS**
13   CAROL W. COLVIN, Acting                  **FOR SUMMARY JUDGMENT**
     Commissioner of Social Security,
14                             Defendant.     **[ECF Nos. 11, 15]**

15

16

17                              **I.  INTRODUCTION**

18          On November 2, 2012, Plaintiff Carol A. Cooper ("Plaintiff") filed a complaint

19   pursuant to 42 U.S.C. § 405(g) of the Social Security Act requesting judicial review of

20   the final decision of the Commissioner of the Social Security Administration

21   ("Commissioner" or "Defendant") regarding the denial of Plaintiff's claim for disability

22   benefits.  (ECF No. 1.)  On February 1, 2013, Defendant filed an answer (ECF No. 8) and

23   the administrative record ("A.R.").  (ECF No. 9.)  On April 2, 2013, Plaintiff filed a

24   motion for summary judgment seeking reversal of Defendant's denial and an award of

25   disability benefits or, alternatively, remand for further administrative proceedings.  (ECF

26   No. 11.)  Plaintiff contends the Administrative Law Judge ("ALJ") committed reversible

27   error by: (1) improperly rejecting the opinions of Plaintiff's treating physician, Gayle

28   Jensen, Psy.D.; and (2) failing to provide legally sufficient reasons for rejecting

1   Plaintiff's testimony.  (ECF No. 11-1 at 6:14-21:3.)[1]  On May 14, 2013, Defendant filed
2   a cross-motion for summary judgment and opposition to Plaintiff's motion for summary
3   judgment.  (ECF Nos. 15, 16.)  Plaintiff did not file an opposition to Defendant's cross-
4   motion or reply to Defendant's opposition, despite a June 13, 2013 deadline to do so.
5   Accordingly, the Court took the pending cross-motions under submission on June 27,
6   2013.  (ECF No. 17.)

7       For the reasons set forth herein, after careful consideration of the administrative
8   record and the applicable law, the Court hereby **RECOMMENDS** that Plaintiff's motion
9   for summary judgment be **GRANTED** and that Defendant's cross-motion for summary
10   judgment be **DENIED**, and the case be **REMANDED** for further administrative
11   proceedings.

12              ## II.  PROCEDURAL BACKGROUND

13       On March 17, 2009, Plaintiff protectively filed an application for social security
14   disability benefits pursuant to Title II of the Social Security Act.  (A.R. 137-140, 182.)
15   Plaintiff alleged a disability beginning on April 2, 2008.  (A.R. 137.)  Plaintiff's
16   application asserted that she was unable to work due to severe depression, anxiety
17   disorder, and post-traumatic stress disorder ("PTSD").  (A.R. 174.)  After an April 30,
18   2009 denial at the initial determination (A.R. 72-75) and a September 24, 2009 denial on
19   reconsideration (A.R. 32, 81-85), Plaintiff filed a timely request for hearing before an
20   ALJ.  (A.R. 86-87.)  On November 9, 2010, Plaintiff testified at an administrative hearing
21   before ALJ Larry B. Parker.  (A.R. 46-69.)  Plaintiff was represented at the hearing by
22   an attorney, Harold McNeil.  (A.R. 46.)  On November 24, 2010, the ALJ denied Plaintiff
23   benefits after finding that Plaintiff was not disabled, as defined by the Social Security
24   Act.  (A.R. 29-41.)  The Commissioner's decision became final on July 27, 2012 when
25   the Appeals Council denied Plaintiff's request for review of the ALJ's decision.  (A.R.
26   8-11.)  Thereafter, Plaintiff filed the instant action on November 2, 2012.  (ECF No.1.)

27   _____

28       [1] Page numbers for docketed materials cited in this Report and Recommendation
     generally refer to those imprinted by the Court's electronic case filing system.  The
     exception is the Court's citation to the specific page numbers of the administrative record.

1

**III. LEGAL STANDARDS**

2

**A.    Determination of Disability**

3    To qualify for disability benefits under the Social Security Act, a claimant must

4 show two things: (1) she suffers from a medically determinable physical or mental

5 impairment that can be expected to last for a continuous period of twelve months or more,

6 or would result in death; and (2) the impairment renders the claimant incapable of

7 performing the work she previously performed or any other substantial gainful

8 employment which exists in the national economy.    42 U.S.C. §§ 423(d)(1)(A),

9 423(d)(2)(A).  A claimant must meet both requirements to be classified as "disabled."

10 *Id.*

11    The Commissioner makes the assessment of disability through a five-step

12 sequential evaluation process.  If an applicant is found to be "disabled" or "not disabled"

13 at any step, there is no need to proceed further.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1003

14 (9th Cir. 2005) (quoting *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974

15 (9th Cir. 2000)).  The five steps are:

16

17    1.  Is claimant presently working in a substantially gainful activity?  If so, then the claimant is not disabled within the meaning of the Social Security Act.  If not, proceed to step two.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

18

19    2.  Is the claimant's impairment severe?  If so, proceed to step three.  If not, then the claimant is not disabled.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

20    3.  Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1?  If so, then the claimant is

21    disabled.    If not, proceed to step four.    *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

22

23    4.  Is the claimant able to do any work that he or she has done in the past?  If so, then the claimant is not disabled.  If not, proceed to step five.  *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

24

25    5.  Is the claimant able to do any other work?  If so, then the claimant is not disabled.  If not, then the claimant is disabled.  *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

26

27 *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180

28 F.3d 1094, 1098-99 (9th Cir. 1999)).

1    Although the ALJ must assist the claimant in developing a record, the claimant
2    bears the burden of proof during the first four steps, while the Commissioner bears the
3    burden of proof at the fifth step. *Tackett*, 180 F.3d at 1098 & n.3 (citing 20 C.F.R. §
4    404.1512(d)).  At step five, the Commissioner must "show that the claimant can perform
5    some other work that exists in 'significant numbers' in the national economy, taking into
6    consideration the claimant's residual functional capacity, age, education, and work
7    experience."  *Id.* at 1100 (quoting 20 C.F.R. § 404.1560(b)(3)).

8    **B.    Scope of Review**

9    The Social Security Act allows unsuccessful claimants to seek judicial review of
10   the Commissioner's final agency decision. 42 U.S.C. §§ 405(g), 1383(c)(3).  The scope
11   of judicial review is limited.  The Court must affirm the Commissioner's decision unless
12   it "is not supported by substantial evidence or it is based upon legal error." *Tidwell v.*
13   *Apfel*, 161 F.3d 599, 601 (9th Cir. 1999) (citing *Flaten v. Sec'y of Health & Human*
14   *Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)); *see also Bayliss v. Barnhart*, 427 F.3d 1211,
15   1214 n.1 (9th Cir. 2005) ("We may reverse the ALJ's decision to deny benefits only if
16   it is based upon legal error or is not supported by substantial evidence.") (citing *Tidwell*,
17   161 F.3d at 601).

18   "Substantial evidence is more than a mere scintilla but less than a preponderance."
19   *Tidwell*, 161 F.3d at 601 (citing *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir.
20   1997)).  "Substantial evidence is relevant evidence which, considering the record as a
21   whole, a reasonable person might accept as adequate to support a conclusion." *Flaten*,
22   44 F.3d at 1457 (citing *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993)).  In
23   considering the record as a whole, the Court must weigh both the evidence that supports
24   and detracts from the ALJ's conclusions. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir.
25   1985) (citing *Vidal v. Harris*, 637 F.2d 710, 712 (9th Cir. 1981); *Day v. Weinberger*, 522
26   F.2d 1154, 1156 (9th Cir. 1975)).  The Court must uphold the denial of benefits if the
27   evidence is susceptible to more than one rational interpretation, one of which supports
28   the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where

evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.") (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995)); *Flaten*, 44 F.3d at 1457 ("If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary.") (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)).  However, even if the Court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a conclusion.  *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

Section 405(g) permits the Court to enter a judgment affirming, modifying or reversing the Commissioner's decision.  42 U.S.C. § 405(g).  The matter may also be remanded to the Social Security Administration for further proceedings.  *Id.*

## IV.  FACTUAL BACKGROUND

Plaintiff alleges she became disabled on April 2, 2008 due to severe depression, anxiety disorder, and PTSD.  (A.R. 174.)  Prior to her alleged disability, Plaintiff was employed as a medical technician.  (A.R. 175.)

**A.    Medical Evidence**

**1.    Treating Physician Evidence**

a.    Dr. Gayle Jensen

Plaintiff began seeing psychologist Dr. Gayle Jensen on April 25, 2008, complaining of migraine headaches, severe anxiety, depression, PTSD, and obsessive-compulsive disorder ("OCD"), as well as grief and severe relational difficulties.  (A.R. 62, 302, 306.)  Plaintiff continued treatment with Dr. Jensen two to four times per month until April 6, 2011.  (A.R. 795.)

On April 24, 2009, Dr. Jensen completed a Mental Disorder Questionnaire Form indicating that Plaintiff was complaining of the illnesses and symptoms stated above.  (A.R. 301-306.)  At that time, according to Dr. Jensen, Plaintiff's attitude and behavior

ranged "widely from pleasant [and] helpful to critical, hostile [and] demanding," and "[s]he seems to look for conflict." (A.R. 303.) With respect to intellectual functioning, Dr. Jensen indicated that Plaintiff is able to concentrate and has no disturbance of thinking or perception, Plaintiff has good judgment about practical caretaking of concrete things, Plaintiff's "judgment in social [and] intimate relationships can be poor" and "[s]he has limited insight into these problems," and Plaintiff's intelligence and intellectual functioning and memory "appear normal," although no testing has been performed. (A.R. 303.) Dr. Jensen also listed numerous symptoms of OCD, mood swings, depression and PTSD. (A.R. 304.) Dr. Jensen further indicated that Plaintiff "maintains [activities of daily living] but in an unenthusiastic, negative manner." (A.R. 304.) Dr. Jensen stated that Plaintiff's social functioning was diminished, that she is "very sensitive to misunderstandings, disagreements [and] neglect," but that it is "[u]nknown how she behaves at work." (A.R. 305.) Dr. Jensen noted that Plaintiff is usually capable of sustained attention, she follows written and oral directions well, she can complete household tasks, and she is capable of performing as assigned, although her mood and attitude are variable. (A.R. 305.) Finally, Dr. Jensen reported that Plaintiff is allergic to all the psychiatric medications she has tried except for Celexa and Xanax, but that she was not currently taking any medications because she was breast-feeding. (A.R. 306.)

On October 20, 2011, Dr. Jensen completed a medical statement concerning Plaintiff in which she opined that as a result of her psychiatric conditions, Plaintiff experiences mild restrictions of activities of daily living and moderate difficulty in maintaining social functioning. (A.R. 788.) Dr. Jensen also indicated that Plaintiff does not have deficiencies of concentration resulting in frequent failure to complete tasks in a timely manner or repeated episodes of deterioration in work or work-like settings, and that Plaintiff does not have a complete inability to function independently outside the area of Plaintiff's home due to panic attacks. (A.R. 788-789.) With respect to work limitations related to Plaintiff's psychiatric state, Dr. Jensen classified Plaintiff as being moderately impaired in her ability to (1) maintain attention and concentration for

extended periods, and (2) accept instructions and respond appropriately to criticism from supervisors.  (A.R. 789-790.)  Dr. Jensen also classified Plaintiff as being markedly impaired in her ability to (1) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and (2) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  (A.R. 789.)  However, Dr. Jensen found that Plaintiff was not significantly impaired in all other areas.  (A.R. 789-790.)

On April 13, 2011, Dr. Jensen completed a Mental Work Restriction Questionnaire regarding Plaintiff's medical conditions.  (A.R. 792-793.)  Dr. Jensen diagnosed Plaintiff with major depressive disorder (recurrent, moderate to severe), OCD, panic disorder without agoraphobia, PTSD, and insomnia.  (A.R. 792.)  Dr. Jensen noted that Plaintiff experiences moderate impairment in (1) completing a normal work day without interruptions from psychologically based symptoms and in performing at a consistent pace without an unreasonable number of and length of rest periods, and (2) accepting instructions and responding appropriately to criticism from supervisors. (A.R. 793.)  Dr. Jensen also noted that Plaintiff experiences marked impairment in maintaining regular attendance and punctuality.  (A.R. 792.)  However, Dr. Jensen found that Plaintiff had no impairments in all other areas.  (A.R. 792-793.)  Finally, Dr. Jensen noted that Plaintiff "is very sensitive to medication [and] has had severe side effects from all the depression [and] anxiety medications she has tried.  She is not on any of these meds now."  (A.R. 793.)

Dr. Jensen also completed an Evaluation Form for Mental Disorders on April 13, 2011.  (A.R. 795-798.)  Dr. Jensen noted that Plaintiff "can be emotionally labile" and "very sensitive to criticism [and] become defensive."  (A.R. 796.)  Dr. Jensen also noted that "[p]rolonged concentration (e.g., for reading) can be difficult for [Plaintiff] if she is poorly rested, anxious, tearful or experiencing a migraine."  (A.R. 796.)  Dr. Jensen indicated that Plaintiff can perform all activities of daily living "although sometimes it

1   is very effortful." (A.R. 797.)  Dr. Jensen noted that Plaintiff's "[s]ocial functioning is

2   usually good with some exceptions of conflict."  (A.R. 797.)  Dr. Jensen additionally

3   noted that Plaintiff can perform tasks "unless she has a migraine or a flare up of

4   fibromyalgia," but that her ability to adapt to work or work-like situations is "unknown."

5   (A.R. 797.)  Finally, Dr. Jensen noted that Plaintiff's "inability to tolerate medication

6   makes it unlikely for her symptoms to improve."  (A.R. 798.)

7                      b.   Dr. Elizabeth Pendragon[2]

8       Dr. Elizabeth Pendragon is Plaintiff's primary care physician. (A.R. 56.)  Between

9   June 25, 2009 and April 4, 2011, Dr. Pendragon treated Plaintiff on at least eighteen

10  occasions, with the majority of the occasions relating to Plaintiff's back pain.  (A.R. 328,

11  340, 392, 406, 414, 596, 605, 616, 624, 705, 712, 719, 725, 742, 748, 762, 781, 818, 824,

12  863.)   On nine of these occasions, Dr. Pendragon specifically treated Plaintiff for

13  fibromyalgia.  (A.R. 332, 600, 609, 628, 723, 752, 785, 822, 867.)  Despite Plaintiff's

14  repeated health problems, Dr. Pendragon consistently released Plaintiff without

15  limitations.  (A.R. 332, 344, 396, 408, 418, 600, 609, 628, 707, 718, 724, 729, 746, 752,

16  767, 785, 823, 867.)

17      On October 19, 2010, Dr. Pendragon completed a Medical Statement Regarding

18  Fibromyalgia in which she specified that Plaintiff has a history of widespread pain for

19  three or more months, pain in eleven or more pressure points, stiffness, irritable bowel

20  syndrome, tension headaches, paresthesias, sensation of swollen hands, sleep disturbance,

21  chronic fatigue, memory loss, and inability to ambulate effectively (e.g., inability to walk

22  a block at a reasonable pace on rough or uneven surfaces).  (A.R. 787.)  Dr. Pendragon

23  indicated that as a result of these symptoms, Plaintiff cannot stand or sit during a

24  workday, bend or stoop, or raise either arm above shoulder level.  (A.R. 787.)  Dr.

25  Pendragon also noted that Plaintiff is able to lift up to twenty pounds on an occasional

26  basis, but Plaintiff cannot lift any weight on a frequent basis. (A.R. 787.)  Dr. Pendragon

27

28          [2] As Plaintiff does not appeal the ALJ's rejection of Dr. Pendragon's treating
    opinion, the Court's discussion of Dr. Pendragon's medical findings will be limited.

additionally indicated that Plaintiff is only able to either sit or stand for fifteen minutes at a time.  (A.R. 787.)  Accordingly, Dr. Pendragon's opines that Plaintiff is not able to work any hours per day.  (A.R. 787.)

c.    Other Treating Physician Evidence

In addition to Dr. Pendragon, Plaintiff visited a number of other healthcare professionals at the Naval Medical Center and Naval Branch Health Clinic, NTC between March 18, 2009 and May 11, 2011, for a variety of reasons including migraine headaches, prenatal care, back pain, and knee pain.  (A.R. 328-512, 572-785.)  Plaintiff underwent knee surgery on March 19, 2010 after complaining of knee pain.  (A.R. 745.)

**2.    Examining Physician Evidence:** Dr. H. Douglas Engelhorn

Plaintiff underwent a psychiatric consultation with Dr. H. Douglas Engelhorn on June 1, 2010.  (A.R. 528.)  On June 2, 2010, Dr. Engelhorn issued a summary of his findings to the Department of Social Services.  (A.R. 529-532.)  In this summary, Dr. Engelhorn indicated that Plaintiff is "fully capable of taking care of her basic needs" and that "[s]he is fully responsible for the care of her 14 month old son."  (A.R. 531.)  Dr. Engelhorn noted that Plaintiff performs a variety of light household chores, including laundry and occasional trips to the grocery store with her mother.  (A.R. 531.)

Dr. Engelhorn noted that Plaintiff "is probably of average intelligence . . . [and] she appears to be in excellent physical health and is fully ambulatory without assistance." (A.R. 531.)  Dr. Engelhorn observed no evidence of psychosis, active depression, or excessive levels of anxiety, and no cognitive impairment.  (A.R. 531.)  He noted that Plaintiff's "[c]oncentration and attention were adequate," and her "[i]nsight and judgment seemed fully intact, although not formally tested."  (A.R. 531.)

Dr. Engelhorn diagnosed Plaintiff with recurrent major depression, PTSD, and probable anxiety disorder.  (A.R. 531.)  Dr. Engelhorn also noted Plaintiff's chronic pain due to her history of fibromyalgia and migraine headaches.  (A.R. 532).  Dr. Engelhorn additionally observed other conditions from Plaintiff's medical history, including thyroiditis, hypothyroidism, gastroesophageal reflux, and her condition post-knee

surgery.  (A.R. 532).

Based on his observations from Plaintiff's consultation and a review of a mental health questionnaire, Dr. Englehorn concluded that Plaintiff "could perform simple, repetitive tasks.  She could also perform complex and detailed work." (A.R. 529, 532.) However, Dr. Engelhorn noted that "[t]here is at least some possibility that her physical health problems and chronic pain might interfere with all of these acivities." (A.R. 532.) Dr. Englehorn indicated Plaintiff "could adequately relate to peers and supervisors in the workplace.  She could be expected to make routine adjustments in the workplace." (A.R. 532.)

In addition to the summary of his findings, Dr. Engelhorn completed a Medical Source Statement of Ability to Do Work-Related Activities on June 11, 2010. (A.R. 534-536.)   In this statement, Dr. Engelhorn indicated Plaintiff has no limitations understanding and remembering simple instructions, carrying out simple instructions, making judgments on simple work-related decisions, or interacting appropriately with the public, supervisors, or co-workers. (A.R. 534-535.)  However, Dr. Engelhorn noted Plaintiff has mild limitations understanding and remembering complex instructions, carrying out complex instructions, making judgments on complex work-related decisions, and responding appropriately to usual work situations and to changes in a routine work setting. (A.R. 534-535.)

### 3.    Non-Examining Physician Evidence: Dr. F. Kalamar

Dr. F. Kalamar, a non-examining physician, completed a Physical Residual Functional Capacity Assessment on September 14, 2009. (A.R. 513-517.)   In this assessment, Dr. Kalamar indicated that with regard to exertional limitations, Plaintiff is capable of occasionally lifting or carrying twenty pounds and frequently lifting or carrying ten pounds. (A.R. 514.)  Dr. Kalamar further noted that Plaintiff is able to sit and stand and/or walk with normal breaks for a total of about six hours out in an eight-hour workday, and that Plaintiff has unlimited ability to push and pull, other than the mentioned limitations for lifting and carrying. (A.R. 514.)

Dr. Kalamar indicated that with regard to postural limitations, Plaintiff cannot climb ladders, ropes, or scaffolds, but that she has only occasional limitations climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling.  (A.R. 514-515.)  Dr. Kalamar indicated that Plaintiff has no manipulative, visual, or communicative limitations.  (A.R. 515-516.)  With regard to environmental limitations, Dr. Kalamar opined that Plaintiff has no limitations with exposure to extreme heat, wetness, humidity, noise, fumes, odors, dust, gases, or poor ventilation, but that she should avoid concentrated exposure to extreme cold, vibration, and hazards.  (A.R. 516.)

**B.**   **The Hearing**

**1.**   **Plaintiff's Testimony**

Plaintiff testified at a hearing before ALJ Larry B. Parker on November 9, 2010.  (A.R. 46-69.)  Plaintiff was born on May 12, 1973 and has at least twelve years of education.  (A.R. 49-50.)  Plaintiff lives with her husband and her son, who was born in early 2009. (A.R. 53.)  Plaintiff's husband is in the military. (A.R. 53.)  Plaintiff testified that she has not worked since the alleged onset date of her disability, April 2, 2008, and that she currently suffers from depression, anxiety, PTSD, migraines, fibromyalgia, gastroesophageal reflux disease, irritable bowel syndrom, and lower extremity pain.  (A.R. 51, 55.)   Plaintiff believes it was Dr. Pendragon who diagnosed her with fibromyalgia through a pressure point check where Dr. Pendragon found thirteen pressure points.  (A.R. 64.)

Plaintiff testified her anxiety disorder sometimes causes her to not want to go outside, and also to be irritable toward people.  (A.R. 52.)  Plaintiff experiences these symptoms three to four times per week, and when she does she goes home or stays inside.  (A.R. 53.)  Due to her son, Plaintiff does not drive when she is feeling anxious.  (A.R. 54.)  Plaintiff testified her psychiatric impairments interfere with her ability to take care of her son, and that when this occurs she does not want to get dressed and her son will stay in his pajamas all day.  (A.R. 54.)  Plaintiff testified that when she has an anxiety attack while taking care of her son she "just [has] to deal with it."  (A.R. 54-55.)  Plaintiff

indicated her depression affects her by making her tearful and agitated.  (A.R. 55.)
Plaintiff noted that sometimes she will be in a store, and will have to leave because she
starts crying.  (A.R. 55.)  Plaintiff additionally testified she has panic attacks a few times
per week.  (A.R. 57.)  Plaintiff does not take medication as she is allergic to anti-
depressants, but she sees her psychologist, Dr. Jensen, once a week.  (A.R. 57, 62.)
Plaintiff indicated that Dr. Jensen helps her work through her issues, and gives her "tools
to help deal with the panic attacks and anxiety."  (A.R. 63.)  Plaintiff has no past history
of alcohol or drug abuse.  (A.R. 63.)

Plaintiff additionally testified she experiences migraine headaches two times a
week but that around the "stressful" time of the hearing before the ALJ she experienced
a migraine headache almost every day.  (A.R. 57.)  Plaintiff described her migraine
headaches as very painful, and she indicated they cause her nausea, dizziness, and
occasional loss of vision in her left eye.  (A.R. 57.)  When Plaintiff experiences a
migraine, she has to "go into a dark place where it's quiet."  (A.R. 57.)  Plaintiff testified
she takes Imitrex for her migraine headaches, which helps her.  (A.R. 57-58.)

In addition to migraine headaches, Plaintiff experiences neck and back pain due
to her fibromyalgia, injuries from a car accident, an incident where she was attacked in
a grocery store, and an incident of domestic violence.  (A.R. 58.)  Plaintiff further
testified she had meniscectomy surgery on her right knee on March 19, 2010.  (A.R. 58-
59.)  Plaintiff stated that she still has a tear and cyst in that knee, and that it is "still in a
lot of pain."  (A.R. 59.)

Plaintiff testified that the greatest amount of weight she can lift at any one time on
a continuing basis is between five and ten pounds, and that although she is able to lift her
child she tries not to because it is "very painful."  (A.R. 60.)  Plaintiff also indicated she
can only sit for two to five minutes before having to change position, and she is only able
to walk about a block and a half before her entire back starts "burning" and her
surgically-repaired knee begins "giving out and hurting."  (A.R. 60-62.)  Plaintiff also
testified that if she is carrying anything her arms "really start to hurt" and her "hand starts

to go numb."  (A.R. 62.)

Plaintiff testified she visits her psychologist, Dr. Jensen, once a week, and that Dr. Jensen helps her "work through [her] issues, and gives [her] tools to help deal with the panic attacks and anxiety."  (A.R. 62-63.)  According to Plaintiff, these unspecified "tools" work "sometimes."  (A.R. 63.)  Plaintiff further testified she is allergic to anti-depressants and when she tries to take them she experiences migraines, severe vertigo and vomiting.  (A.R. 63.)

## 2.    The Vocational Expert's Testimony

Vocational expert Connie Guillory testified at Plaintiff's hearing before the ALJ. (A.R. 64-68.)  After Plaintiff stated that during her entire career she was employed as a medical technician, medical assistant, and critical care technician, Ms. Guillory testified that medical technician and medical assistant work are both described in the *Dictionary of Occupational Titles* as light duty, skilled, with a skilled vocational preparation time of five. (A.R. 64-66.) Ms. Guillory indicated that if Plaintiff's testimony governed the case, Plaintiff would not be able to perform her past relevant work.  (A.R. 66.)  The ALJ then asked Ms. Guillory to consider a hypothetical claimant who was (1) younger than Plaintiff, with at least twelve years of education and training; (2) limited to lifting twenty pounds occasionally and ten pounds frequently; (3) limited to standing, sitting, and walking six out of eight hours a day; (4) unable to be exposed to extreme cold, vibration, and hazards; (4) mildly restricted in daily activity in non-exertional mental limitation; (5) moderately limited in social functioning; and (6) not deficient in concentration, persistence, or pace.  (A.R. 67.)  Ms. Guillory testified that this hypothetical person would not be able to perform Plaintiff's past relevant work due to the social aspects of that work, but that there were unskilled jobs in the local and national economy that this hypothetical person could perform, including production inspector, hand packager, and production assistant.  (A.R. 67-68.)

/ / /

/ / /

**C.     The ALJ's Findings**

After considering all of the evidence, the ALJ concluded Plaintiff has not been under a disability, as defined by the Social Security Act, from April 2, 2008, through the date of his decision.  (A.R. 41.)  Specifically, at step one of the sequential evaluation process, the ALJ concluded that Plaintiff has not engaged in substantial gainful activity since April 2, 2008, the alleged onset date.  (A.R. 34.)  At step two, the ALJ concluded that Plaintiff has the following severe impairments: headache syndrome; right knee internal derangement; fibromyalgia; depressive disorder; and anxiety disorder.  (A.R. 34.)  At step three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meet or exceed the impairments contained in the Listing of Impairments.  (A.R. 35.)  Prior to considering step four, the ALJ determined that Plaintiff has the residual functional capacity to perform light work limited to performing simple tasks with avoidance of concentrated exposure to cold, vibrations, and hazards.  (A.R. 36.)  At step four, the ALJ found that Plaintiff is unable to perform her past relevant work as a medical technician or medical assistant.  (A.R. 39-40.)  Finally, at step five, the ALJ concluded that, considering Plaintiff's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (A.R. 40.)  Specifically, the ALJ found Plaintiff is capable of performing the work of a production inspector, hand packager and production assistant.  (A.R. 40-41.)  Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act.  (A.R. 41.)

## V.  DISCUSSION

In her motion for summary judgment, Plaintiff contends the ALJ committed two reversible errors: (1) improperly rejecting the medical opinion of Plaintiff's treating psychologist, Dr. Jensen; and (2) improperly rejecting Plaintiff's testimony.  (ECF No. 11-1 at 5:12-14.)  In the cross-motion for summary judgment, Defendant counters that the ALJ (1) gave valid reasons for discounting Dr. Jensen's form opinion and properly concluded Dr. Jensen's conclusions were contrary to the great weight of evidence, and

(2) properly determined that Plaintiff was not fully credible, and Plaintiff's disagreement is not evidence of error.  (ECF No. 15-1 at 3:13-14, 4:1-2, 5:7-8.)  The Court addresses each argument in turn.

## A.    The ALJ's Rejection of Treating Physician's Opinion

### 1.    Parties' Arguments

Plaintiff contends the ALJ erred by failing to provide legally sufficient reasons for rejecting Dr. Jensen's treating opinion.[3]  Specifically, Plaintiff argues that the ALJ's rejection of Dr. Jensen's opinion was improper because: (1) Dr. Jensen's form opinion was accompanied by detailed narrative descriptions of Plaintiff's mental impairments; (2) the ALJ improperly relied on the opinions of Plaintiff's examining physician over the treating physician; and (3) the opinion of the examining physician was consistent with Dr. Jensen's opinion.  (ECF No. 11-1 at 7:25-10:18.)

In response, Defendant argues the ALJ's rejection of Dr. Jensen's opinion was proper because the ALJ set forth three specific and valid reasons for discrediting Dr. Jensen's form opinion, namely, that the opinion was (1) not accompanied by objective evidence; (2) self-contradictory; and (3) in conflict with the other medical evidence in the record.  (ECF No. 15-1 at 4:1-5:6.)

### 2.    Legal Standards

In assessing a disability claim, an ALJ may rely on medical "opinions of three types of physicians: (1) those who treat the claimant (treating physicians[4]); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)."  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  The Commissioner applies a hierarchy of deference to these

---

[3] Plaintiff does not appeal the ALJ's rejection of Dr. Pendragon's treating opinion. Accordingly, the Court does not address the ALJ's findings in this regard.

[4] A treating physician is one who has provided treatment to a claimant on more than one occasion.  A physician qualifies as a treating source if the claimant sees her with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition.  *Benton v. Barnhart*, 331 F.3d 1030, 1036 (9th Cir. 2003).

three types of opinions.  The opinion of a treating doctor is generally entitled to the greatest weight.  *Id.*  ("As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant.") (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)); 20 C.F.R. § 404.1527(c)(2).  "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830 (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984)).  However, "the findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings." *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996), *cert. denied*, 519 U.S. 1113 (1997) (citing *Andrews*, 53 F.3d at 1041; *Magallanes v. Bowen*, 881 F.2d 747, 752 (9th Cir. 1989)).

"The opinion of a treating physician is given deference because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'" *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)).  "However, the opinion of the treating physician is not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Id.* (citing *Magallanes*, 881 F.2d at 751; *Rodriguez v. Bowen*, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989)); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability.") (citing *Magallanes*, 881 F.2d at 751).

If the treating physician's opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques, or is inconsistent with other substantial evidence in the record, it is not entitled to controlling weight. *Orn v. Astrue*, 495 F.3d 625, 631-32 (9th Cir. 2007) (quoting Social Security Ruling 96-2p).  In that event, the ALJ must consider the factors listed in 20 C.F.R. § 404.1527(c) to determine what weight to accord the opinion. *See* Social Security Ruling 96-2p (stating that a finding that a

treating physician's opinion is not well supported or inconsistent with other substantial evidence in the record "means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected.  Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527.").  The factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) the specialization of the treating source; and (6) any other factors brought to the ALJ's attention that tend to support or contradict the opinion.  20 C.F.R. § 404.1527(c)(2)(I)-(ii), (c)(3)-(6).

Opinions of treating physicians may only be rejected under certain circumstances. "[W]here [a] treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." *Lester*, 81 F.3d at 830 (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)).  However, "if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* at 830 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

### 3.    Analysis

The ALJ gave four reasons for giving Dr. Jensen's October 2010 checklist form "little weight."  (A.R. 39.)  The ALJ dismissed this form on the basis that it: (1) contradicted Dr. Jensen's own report completed in April 2009; (2) contradicted Dr. Engelhorn's evaluation; (3) contained internal inconsistencies; and (4) was not supported by objective evidence.  (A.R. 39.)  For the reasons discussed below, after considering the record as a whole, the Court finds the ALJ committed legal error by rejecting Dr. Jensen's opinion.

/ / /

/ / /

a.    *Inconsistencies Among Dr. Jensen's April 2009 and October 2010*
      *Reports*

The first reason provided by the ALJ for discrediting Dr. Jensen's October 2010 opinion is that the opinion contradicts her April 2009 opinion. (A.R. 39.) "The Ninth Circuit has found that when a doctor's conclusions are not consistent with his own findings, that is a specific and legitimate reason for rejecting that opinion." *Jones v. Colvin*, No. 1:12-cv-1283- BAM, 2013 U.S. Dist. LEXIS 143425, at *16 (E.D. Cal. Sept. 30, 2013) (citing *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986) (per curiam)). "However, the ALJ must explain how the findings are inconsistent." *Id.* It is insufficient for the ALJ to simply assert that the doctor's findings are inconsistent without explaining how they are inconsistent. *Id.* at 17 ("[T]he ALJ asserts that Dr. Ahmed's findings of Plaintiff are inconsistent, but fails to explain *how* they are inconsistent with the overall evidence.").

In the instant case, the ALJ did not summarize the conflicting evidence contained within Dr. Jensen's reports. Rather, he simply stated in a conclusory manner that Dr. Jensen's April 2009 and October 2010 were internally inconsistent. (A.R. 39.) Indeed, "[t]he ALJ's interpretation of the facts, conflicting clinical evidence, and [his] findings based on the conflicting medical evidence are missing." *Jones v. Colvin*, 2013 U.S. Dist. LEXIS 14325, at *18-19 (citing *Orn*, 495 F.3d at 632).

In its cross-motion for summary judgment Defendant attempts to provide an after-the-fact justification for the ALJ's conclusion. (ECF No. 15-1 at 4:12-19.) However, "[w]hile the Court can draw reasonable inferences from the ALJ's opinion, *Magallanes*, 881 F.2d at 755, the Court cannot consider Defendant's post hoc rationalizations. The Ninth Circuit has repeatedly emphasized that the 'bedrock principle of administrative law' is that a 'reviewing court can evaluate an agency's decision only on the grounds articulated by the agency.'" *Jones v. Colvin*, 2013 U.S. Dist. LEXIS 14325, at *17-18 (quoting *Ceguerra v. Sec'y of Health & Human Servs.*, 933 F.2d 735, 738 (9th Cir. 1991) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)). The Court "cannot

affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

In sum, the ALJ's conclusory statement that Dr. Jensen's reports are internally inconsistent fails to provide specific and legitimate reasons supported by substantial evidence for rejecting Plaintiff's treating physician's opinion.

### b.    Contradiction With Dr. Engelhorn's Opinion

The second reason provided by the ALJ for discrediting Dr. Jensen's October 2010 opinion is that the opinion contradicts the opinion of Plaintiff's examining physician, Dr. Engelhorn.   (A.R. 39.)    Although a treating physician's opinion is not entitled to controlling weight if inconsistent with other substantial evidence in the record, *Orn*, 495 F.3d at 631, "[t]o reject the opinion of a treating physician which conflicts with that of an examining physician, the ALJ must 'make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.'" *Magallanes*, 881 F.2d at 751 (quoting *Winans*, 853 F.2d at 647) (citing *Murray*, 722 F.2d at 502). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986) (per curiam) (citing *Swanson v. Sec'y of Health & Human Servs.*, 763 F.2d 1061, 1065 (9th Cir. 1985)); *see also Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) ("The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct. . . . It is incumbent on the ALJ to provide detailed, reasoned, and legitimate rationales for disregarding the physician's findings.").

Here, the ALJ did not meet his burden of setting forth specific, legitimate reasons for rejecting Dr. Jensen's opinion in favor of Dr. Engelhorn's opinion.  Indeed, the ALJ failed to set forth a detailed and thorough summary of the conflicting opinions and his interpretation thereof.  Rather, the ALJ simply concluded that the two opinions were contradictory.  (A.R. 39.)  The ALJ's failure in this regard amounts to legal error.

1    "Although legitimate reasons for the ALJ's reliance on Dr. [Engelhorn's] opinions over

2    those of Dr. [Jensen] may exist, this Court is only permitted to review the explanation

3    offered by the ALJ in his written opinion."  *Langdon v. Astrue*, No. 12-CV-2624 AJB

4    (NLS), 2013 U.S. Dist. LEXIS 147138, at *35 (S.D. Cal. July 9, 2013) (citing *Connett*,

5    340 F.3d at 874).  "If the ALJ's explanation is inadequate, the reviewing court may not

6    search the record for reasons that support his decision."  *Id.* (citing *Connett*, 340 F.3d at

7    874); *see also Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir. 1996) (failing to offer

8    reasons for disregarding opinions of two of claimant's treating physicians and making

9    contrary findings was error).

10                        c.    *Internal Inconsistencies in Dr. Jensen's October 2010 Report*

11              The third reason provided by the ALJ for discrediting Dr. Jensen's October 2010

12   opinion is that the opinion is internally contradictory.  (A.R. 39.)  Specifically, the ALJ

13   reasoned that this form contradicted itself because "Dr. Jensen claims [Plaintiff] cannot

14   complete a normal workweek, yet she also states the claimant has no difficulties

15   whatsoever completing both simple and complex tasks and has no deficiencies of

16   concentration, persistence or pace resulting in frequent failure to complete tasks in a time

17   [sic] manner."  (A.R. 39.)  However, the Court finds that the ALJ's conclusion is not

18   supported by substantial evidence.  Indeed, Dr. Jensen's October 2010 form does not state

19   that Plaintiff cannot complete a normal workweek.  Rather, the form states that Plaintiff's

20   "ability to complete a normal workday or workweek without interruptions from

21   psychologically based symptoms and to perform at a consistent pace without an

22   unreasonable number and length of rest periods" is "markedly impaired."  (A.R. 789.)

23   Further, although the October 2010 form does not provide a definition for "markedly

24   impaired," the Court notes that Dr. Jensen's April 2011 opinion indicates that "marked

25   impairment" means that the "[a]bility to function is seriously limited but not severe."

26   (A.R. 794.)  Thus, the ALJ's conclusion that Dr. Jensen opined that Plaintiff was unable

27   to complete a normal workweek is not supported by substantial evidence.

28   / / /

### d.     Objective Evidence

The fourth and final reason provided by the ALJ for discrediting Dr. Jensen's October 2010 opinion is that Dr. Jensen provided no objective medical records or clinical findings to support this form. (A.R. 39.)  The Court disagrees.  Although checklist forms may be rejected when unsupported by objective medical findings, *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996), such is not the case here.  While not submitted at the time of the October 2010 form, Dr. Jensen did complete a five-page Mental Disorder Questionnaire Form dated April 24, 2009.  (A.R. 302-306).  Dr. Jensen included in this questionnaire detailed descriptions of Plaintiff's symptoms, along with multiple diagnoses of Plaintiff's mental health issues.  (A.R. 302-306).  Dr. Jensen additionally completed a Mental Work Restriction Questionnaire and an Evaluation Form for Mental Disorders on April 13, 2011 which also included descriptions of Plaintiff's symptoms and diagnoses.   (A.R. 792-98.)   The Court finds these forms sufficient to constitute "medically acceptable clinical and laboratory diagnostic techniques" within the meaning of 20 C.F.R. § 404.1527(c)(2).  *See Bilby v. Schweiker*, 762 F.2d 716, 719 (9th Cir. 1985) (per curiam) (finding doctor's report which described the clinical evidence and symptoms of the claimant's mental illness sufficient as supportive objective findings); *see also Henderson v. Astrue*, 634 F. Supp. 2d 1182, 1192 (E.D. Cal. 2009) (rejecting ALJ's assertion that check-box forms should be accorded little weight where record contained doctors' detailed narrative reports setting forth "results of objective tests conducted, interview notes, and detail[ing] the bases for their findings."); *cf. Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (finding that ALJ properly rejected a treating physician's opinion that "was in the form of a checklist, [and] did not have supportive objective evidence").

In sum, the Court finds the ALJ committed legal error by rejecting Dr. Jensen's medical opinion.  Even if the record here supported the ALJ's decision by substantial evidence, the ALJ's failure to apply the proper legal standard in rejecting Dr. Jensen's opinion in his decision is a reversible error.  *Tidwell*, 161 F.3d at 601 (noting that an

ALJ's decision to deny disability benefits may be set aside "if that decision is not supported by substantial evidence *or* it is based upon legal error.") (emphasis added) (citing *Flaten*, 44 F.3d at 1457); *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968) ("Even though the findings be supported by substantial evidence, the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.").

**B.      The ALJ's Rejection of Plaintiff's Testimony**

      **1.      Parties' Arguments**

Plaintiff argues that the ALJ erred by failing to articulate clear and convincing reasons for rejecting her testimony. (ECF No. 11-1 at 12:8-17.) Specifically, Plaintiff posits that the ALJ erred because (1) his "decision is void of any sufficient rationale at all as to why [he] ignores and disregards [Plaintiff's] testimony," (2) he improperly discredited Plaintiff's testimony on the sole basis that it was inconsistent with objective medical evidence in the record, (3) he improperly discredited Plaintiff's testimony due to her ability to maintain activities of daily living, and (4) he found Plaintiff's testimony to be both credible and non-credible at the same time.[5] (ECF No. 11-1 at 13:5-7, 14:22-25, 16:12-15, 18:5-6.)

In response, Defendant contends the ALJ properly articulated four specific reasons for discounting Plaintiff's credibility: (1) "Plaintiff's activities of daily living were inconsistent with her claims of disability;" (2) "overwhelming medical evidence . . . showed Plaintiff was within normal limits, there was no distress, and neurological

---

[5] With respect to Plaintiff's fourth argument, the Court has reviewed the Seventh Circuit case cited in Plaintiff's motion, *Carradine v. Barnhart*, 360 F.3d 751, 754-56 (7th Cir. 2004), in support of this argument. However persuasive that analysis might be, "[t]he decisions in other circuits are not binding upon this court." *The Dauntless*, 129 F. 715, 717 (9th Cir. 1904). Moreover, *Carradine* suggests that an ALJ should be prohibited from believing some, but not all, of a disability claimant's testimony. This reasoning appears to be at odds with the extensive body of Ninth Circuit case law addressing an ALJ's analysis of a claimant's credibility. Plaintiff has not cited, nor has the Court found, a single Ninth Circuit case that requires an ALJ's adverse credibility analysis to be an all-or-nothing determination.

examination revealed no deficits;" (3) the medical records showed Plaintiff was receiving conservative treatment; and (4) Plaintiff refused treatment that was offered to her. (ECF No. 15-1 at 6:3-7:24.)

## 2. Legal Standards

"An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability." 42 U.S.C. § 423(d)(5)(A). Indeed, "[a]n ALJ cannot be required to believe every allegation of [disability], or else disability benefits would be available for the asking, a result plainly contrary to the [Social Security Act]." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "The ALJ is responsible for determining credibility and resolving conflicts in medical testimony." *Magallanes*, 881 F.2d at 750 (citing *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)).

The credibility of a claimant's testimony regarding subjective symptoms is analyzed in two steps. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective evidence of an impairment or impairments that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* Second, if the claimant meets the first step, and there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if she provides "specific, clear and convincing reasons" for doing so. *Id.* "In order for the ALJ to find [a claimant's] testimony unreliable, the ALJ must make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'" *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)). It is "not sufficient for the ALJ to make only general findings; he must state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (citing *Varney v. Sec'y of Health & Human Servs.*, 846 F.2d 581, 584 (9th Cir. 1988)). "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily

activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (citing *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995); 20 C.F.R. § 404.1529(c)); *see also Orn*, 495 F.3d at 636 (noting factors an ALJ may consider in making credibility assessment include claimant's "reputation for truthfulness, inconsistencies in the testimony or between testimony and conduct, daily activities, and 'unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment.'") (quoting *Fair*, 885 F.2d at 603); *Fair*, 885 F.2d at 604 n.5 (an ALJ is permitted to use "ordinary techniques of credibility evaluation"). Even if one or more reasons listed by the ALJ are invalid, so long as the ALJ provides some valid reasons, the ALJ's credibility determination will be upheld. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008); *Batson*, 359 F.3d at 1195-97.

### 3.   Analysis

Here, the ALJ found that "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 37.) However, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (A.R. 37.) Because the ALJ found Plaintiff met the first step of the test, and there is no evidence of malingering, the Court must determine whether the ALJ provided "specific, clear and convincing reasons" for his adverse credibility finding. *Vasquez*, 572 F.3d at 591. The Court finds that he did.

First, the ALJ discussed how Plaintiff's activities of daily living undermine her credibility. The ALJ indicated that Plaintiff "goes regularly to the gym despite her debilitating pain and allegations that she has difficulty leaving the house and dealing with people." (A.R. 38.) Plaintiff's motion for summary judgment counters that Plaintiff goes to the gym "as therapy for her medical impairments." (ECF No. 11-1 at 18:1-2).

Although a social security claimant may engage in exercise for therapeutic reasons despite pain, *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001), the record does not support Plaintiff's post hoc justification that her daily gym visits were therapeutic. Rather, Plaintiff's physician's notes simply state that she was going to the gym daily. (A.R. 407, 751.)  Moreover, irrespective of the physical pain that might result from Plaintiff's daily gym visits, Plaintiff's daily gym visits are at odds with her testimony that she has difficulty leaving the house and being surrounded by other people.  (A.R. 55, 57.) Accordingly, the Court finds that Plaintiff's daily gym visits, despite her alleged disability, is a specific, clear and convincing reasons supporting the ALJ's decision to discount Plaintiff's credibility.

The ALJ also reasoned that due to her husband's deployment, Plaintiff "is fully responsible for the care of her young child" and "she is able to provide adequate care for [him] by herself with minimal assistance." (A.R. 38.)  As Plaintiff's motion correctly argues, the "mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability."  *Vertigan*, 260 F.3d at 1050. However, the Court finds that Plaintiff's ability to take care of her child, despite her alleged disability, is a specific, clear and convincing reason supporting the ALJ's decision to discount Plaintiff's credibility.  *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (finding that the ALJ properly rejected a claimant's testimony regarding her pain from fibromyalgia where that testimony "was undermined by her own testimony about her daily activities, such as attending to the needs of her two young children, cooking, housekeeping, laundry, shopping, attending therapy and various other meetings every week."); *Morgan*, 169 F.3d at 600 (noting that a claimant's "ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child served as evidence of [his] ability to work.  If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a

claimant's allegations.") (citing *Fair*, 885 F.2d at 603).[6]  The ALJ additionally noted that both Dr. Jensen and Dr. Englehorn opined that Plaintiff "has only a mild restriction in her activities of daily living." (A.R. 38-39.)  This finding by the ALJ further supports the Court's conclusion that the ALJ identified specific, clear and convincing reasons for discounting Plaintiff's credibility.

Second, the ALJ discounted the credibility of Plaintiff's testimony because "she refuses most methods of help offered to her." (A.R. 38.)  In support of this conclusion, the ALJ cites a medical record completed by Dr. Englehorn, where he opined that with regard to Plaintiff's psychiatric health, Plaintiff "repeats same list of problems every visit- but denies most methods of help." (A.R. 652.)  The Court finds this a clear and convincing reason to support the ALJ's decision to discredit Plaintiff's testimony.  *See Montalvo v. Astrue*, 237 F. App'x 259, 262 (9th Cir. 2007) (upholding an ALJ's rejection of a claimant's subjective testimony of pain where the claimant "failed to comply with certain aspects of her recommended treatment--she did not return for a follow-up visit, [and] did not follow a treating physician's recommendation[s]."); *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (recognizing that a relevant factor in determining a claimant's credibility "may be 'unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment.'") (quoting *Fair*, 885 F.2d 597 at n.5).  This finding by the ALJ further supports the Court's conclusion that the ALJ identified specific, clear and convincing reasons for discounting Plaintiff's credibility.

Third, the ALJ discounted the credibility of Plaintiff's testimony because Plaintiff "has been prescribed conservative therapies" for her treatment of pain, such as physical therapy, electrical nerve stimulation, and Tylenol. (A.R. 38.)  "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007), *cert.*

---

[6] Plaintiff's reliance on *Gentle v. Barnhart*, 430 F.3d 865, 867-68 (7th Cir. 2005), is unpersuasive.  Although that Seventh Circuit decision provides some support for Plaintiff's argument, it is not in harmony with the Ninth Circuit decisions cited above.

*denied*, 552 U.S. 1141 (2008) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)).   Accordingly, the ALJ identified a specific, clear and convincing reason for discounting Plaintiff's credibility.

Finally, the ALJ discounted the credibility of Plaintiff's testimony because she has consistently been released by her physicians without limitations after her visits to the Naval Medical Center.  (A.R. 38).  The administrative record supports this assertion. (A.R.  248, 265, 270, 275, 279, 284, 290, 295, 300, 332, 339, 344, 363, 381, 386, 396, 408, 418, 437, 442, 455, 459, 465, 470, 579, 582, 587, 600, 609, 628, 646, 653, 658, 663, 682, 707, 718, 724, 729, 735, 741, 746, 752, 767, 775, 785, 817, 823, 827, 831, 842, 848, 867, 873.)  The ALJ also noted that both Dr. Ramirez and Dr. Englehorn reported that Plaintiff was in good health, and that Dr. Pendragon opined that Plaintiff's "primary problem might be a Somatoform disorder related to her focus on pain."  (A.R. 38).  The ALJ additionally noted that while Plaintiff "has an impressive list of complaints that she repeats at every office visit . . . her exams consistently show very little in the way of objective medical findings."  (A.R. 38.)  Here, Plaintiff argues that "a rejection of a claimant's testimony based on a lack of objective evidence is always legally insufficient." (ECF No. 11-1 at 14:26-15:1.)  However, as discussed above, the ALJ did not solely rely on a lack of objective medical evidence in discounting Plaintiff's testimony.  Thus, the ALJ's finding of a lack of medical evidence to support Plaintiff's testimony is specific, clear and convincing reason justifying the ALJ's decision to discount Plaintiff's credibility.  *See Burch*, 400 F.3d at 681 ("Although the lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); *accord Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991) (en banc) (holding that an ALJ "may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.").

In sum, the Court finds that the ALJ set forth "findings sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the

1  claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (per curiam)

2  (citing *Bunnell*, 947 F.2d at 345-46).  Accordingly, the Court must defer to the ALJ's

3  credibility analysis.  *See Fair*, 885 F.2d at 603 ("Where, as here, the ALJ has made

4  specific findings justifying a decision to disbelieve an allegation . . . and those findings

5  are supported by substantial evidence in the record, our role is not to second-guess that

6  decision.").[7]

7  **C.    Remand For Further Proceedings Is Appropriate**

8      In social security cases, the Court has discretion to remand a case either for

9  additional evidence and findings, or to award benefits.  *McAllister v. Sullivan*, 888 F.2d

10  599, 603 (9th Cir. 1989) (citing *Winans*, 853 F.2d at 647).  "If additional proceedings can

11  remedy defects in the original administrative proceedings, a social security case should

12  be remanded.  When, however, a rehearing would simply delay receipt of benefits,

13  reversal [and an award of benefits] is appropriate."  *Lewin v. Schweiker*, 654 F.2d 631,

14  635 (9th Cir. 1981) (citations omitted).

15      Here, as indicated above, the ALJ committed legal error by rejecting Dr. Jensen's

16  medical opinion.  Therefore, remand for further proceedings is appropriate.  On remand,

17  the ALJ cannot reject Dr. Jensen's opinion without providing "specific and legitimate

18  reasons . . . supported by substantial evidence in the record."  *Lester*, 81 F.3d at 830

19  (citing *Andrews,* 53 F.3d at 1043).  If the ALJ determines that Dr. Jensen's opinion

20  should not be given controlling weight, the ALJ must address the weight to accord her

21  opinion using all of the factors provided in 20 C.F.R. § 404.1527(c)(2).

22  / / /

23  / / /

24

25

26  [7] The Court's conclusion is not altered by the possibility that the ALJ may have noted additional reasons for discrediting Plaintiff's testimony that may not have been
27  supported by specific, clear and convincing reasons.  Even if one or more reasons listed by the ALJ are invalid, so long as the ALJ provides some valid reasons, the ALJ's
28  credibility determination will be upheld.  *Bray*, 554 F.3d at 1227; *Carmickle*, 533 F.3d at 1162-63; *Batson*, 359 F.3d at 1195-97.

# VI.  CONCLUSION

After a thorough review of the record in this matter and based on the foregoing analysis, this Court **RECOMMENDS** Plaintiff's motion for summary judgment be **GRANTED** and Defendant's cross-motion for summary judgment be **DENIED**, and the case be **REMANDED** for further proceedings.

This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(d).

IT IS HEREBY ORDERED that **no later than January 6, 2014**, any party may file and serve written objections with the Court and serve a copy on all parties.  The documents should be captioned "Objections to Report and Recommendation."

IT IS FURTHER ORDERED that any reply to the objections shall be filed and served **no later than ten days** after being served with the objections.  The parties are advised that failure to file objections within the specific time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

**IT IS SO ORDERED**.

DATED:  December 5, 2013

DAVID H. BARTICK
United States Magistrate Judge